CHAD A. READLER
Acting Assistant Attorney General, Civil Division
ALEX G. TSE
Acting United States Attorney
DEBRA D. FOWLER
debra.fowler@usdoj.gov
Senior Aviation Counsel
JOSHUA H. JOSEPH
joshua.h.joseph@usdoj.gov
Trial Attorney
Torts Branch, Civil Division
U.S. Department of Justice
Post Office Box 14271
Washington, DC 20044-4271
Phone: (202) 616-4025
Fax: (202) 616-4002

Attorneys for Defendant
United States of America

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| MITCHELL OW and MARGARET BEDIMA-OW,<br><br>             Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>             Defendant. | No. 3:17-CV-00733-SK<br><br>DEFENDANT UNITED STATES OF AMERICA'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO EXCLUDE TESTIMONY OF PLAINTIFFS' EXPERT RICHARD BURGESS; AND PROPOSED ORDER<br><br>Date:  September 10, 2018<br>Time:  9:30 a.m.<br>Judge: Hon. Sallie Kim |

## NOTICE OF MOTION AND MOTION

TO ALL COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on September 10, 2018, or as soon thereafter as counsel may be heard by the above-entitled court, located at 450 Golden Gate Ave., Courtroom A, 15th Floor, San Francisco, California, in the courtroom of Judge Sallie Kim, Defendant the United States of America will and hereby does move this Court to issue an Order excluding testimony of Plaintiffs' expert Richard Burgess regarding causation because it is unreliable and lacks proper foundation.

This Motion is based on the Notice of Motion, Motion and the Memorandum of Points and Authorities filed herewith, the evidence filed in support of this Motion, and upon such other matters as may be presented to the Court at the time of a hearing.

Dated: July 23, 2018                 Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General
Civil Division

ALEX G. TSE
Acting United States Attorney

*/s/Debra D. Fowler*
DEBRA D.FOWLER
Senior Aviation Counsel
debra.fowler@usdoj.gov
JOSHUA H. JOSEPH
joshua.h.joseph@usdoj.gov
Torts Branch, Civil Division
U.S. Department of Justice
Post Office Box 14271
Washington, DC 20044-4271
Tel: (202) 616-4025/30
Fax: (202) 616-4002
Attorneys for United States

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

The United States moves to limit the testimony of Plaintiffs' air traffic control expert.  His testimony should be limited to his field.  The United States moves to strike his opinions that exceed the subject matter of air traffic control, such as his opinion about why Plaintiff Mitchell Ow, a firefighter driving a firefighting vehicle, turned the vehicle at a particular time.

This case is brought under the Federal Tort Claims Act and arises from the personal injuries Plaintiff Ow sustained in a vehicle accident on June 24, 2014, at the Oakland International Airport.  At the time of the accident, Ow was participating in a training drill at the Airport.  The drill called for the responding firefighters to travel from their station northbound on taxiway "Bravo" to the intersection of taxiway "Bravo 1" where they would make a right turn to the ramp of the Oakland Maintenance Center (OMC).  (Deposition of Richard "Pete" Burgess, hereinafter "Burgess Depo.," attached to the concurrently filed Declaration of Debra Fowler (Fowler Decl.) as Exhibit A, at 55:22-56:3.)  Three of the responders who were approximately 32 seconds ahead of Ow negotiated the route without incident.  *See, Id.*  When Ow made the same turn onto taxiway Bravo 1, however, he rolled the firetruck he was driving.  Shortly before the rollover, a jet on the north side of the airport that had been taxiing southbound on Bravo on the North field slowed and stopped roughly 200 feet on the northeast side of the

Bravo/Bravo 1 intersection.[1]  Plaintiffs' Complaint alleges that federally-employed air traffic controllers negligently allowed the jet to enter the area of the drill, failed to warn Ow about the jet, and that the mere presence of the jet required Ow to take evasive action to avoid it, which caused the accident.

The United States denies all allegations of negligence.  For the purposes of this motion, however, a determination of whether the controllers breached any duty of care is not material.  At issue here is whether Plaintiffs' air traffic control expert, Richard "Pete" Burgess, can offer opinions that exceed his area of his expertise.  Burgess seeks to offer his opinion about *why* Ow turned his vehicle – effectively testifying about Ow's state of mind to opine that Ow turned the vehicle to avoid the jet.

Burgess' opinions about causation are unreliable, irrelevant, and beyond the scope of his expertise.  He has no background, training, or experience as an Aircraft Rescue Firefighter (ARFF), and has never driven an ARFF vehicle.  He is not an accident reconstruction expert and he has not even reviewed a reconstruction of this accident.  Accordingly, the United States respectfully requests that this Court exclude Burgess' improper causation testimony under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.* 509 U.S. 579 (1993).

## II.    LEGAL STANDARD

The admissibility of expert testimony is governed by Federal Rule of Evidence 702.

---

[1]  The Oakland airport complex is made up of three runways on the "North" field and one runway on the "South" field.

When evaluating whether an individual is qualified to render opinions on a particular subject the trial court should look to the purported expert's "knowledge, skill, experience, training, or education." Fed. R. Evid. 702.

Rule 702 provides that a qualified expert may testify if the expert's "knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). In other words, the testimony must be relevant. *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 591 (1993). The expert's testimony must also be reliable. *See id.* at 590. To ensure reliability, the expert testimony must relate to scientific, technical, or other specialized knowledge. *See id.* The testimony cannot be based on unsubstantiated speculation or subjective beliefs. *See id.* The trial judge, acting as the gatekeeper, has a special obligation to ensure that all expert testimony is both relevant and reliable. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).

"Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Daubert,* 509 U.S. at 591-92. "The adjective 'scientific' implies a grounding in the methods and procedures of science." *Id.*

## A. Burgess's Opinions Are Unreliable and Outside the Scope of his Qualifications.

Burgess' background is in air traffic control. He retired from the Federal Aviation Administration (FAA) in 1994. His assignment for this case was to formulate opinions strictly related to air traffic control and nothing outside of that area. (Burgess Depo. at 7:25-8:4.) Burgess is not an accident reconstruction expert and he has never had any training as an ARFF driver. (Burgess Depo. at 42:20-43:1.) He has never testified as an

expert on vehicle rollovers or as a human factors expert.  (Burgess Depo. at 44:3-7.)

Despite his lack of qualifications to do so, Burgess opines that Ow turned at the intersection of taxiway Bravo and Bravo 1 to avoid the aircraft that was holding short on the north side of that intersection.  He faults air traffic controllers for not instructing the aircraft to stop further from the intersection and/or advising the ARFF drivers that the jet "was going to stop before it got to taxiway B-1."  (Expert Report of Burgess, hereinafter "Burgess Rep.," attached to Fowler Decl. as Exhibit B, at ¶¶ 4-5.)  These opinions – that alleged air traffic control failures "caused" Ow's vehicle to roll over – are conclusory and not based on Burgess's background or expertise in the field of air traffic control.  His report does not explain the basis for such opinions.

When asked about the basis at his deposition, Burgess's responses consisted entirely of conjecture:

> Q.    Okay. Now I'm going to go back to my question which was how [would] Mr. Brown stopping the aircraft at the bridge have avoided this accident?
> A.    It would eliminate the conflict.
> Q.    Okay. How would that have avoided the accident?
> A.    It would eliminate a head-on situation between rescue vehicle and an aircraft which were both moving.
> Q.    How would that have avoided the accident?
> A.    The rescue vehicles could have concentrated on what the simulated alert was about to get to the OMC.
> Q.    How do you know what Mr. Ow was concentrating on?
> A.    I mentioned that before I have no idea they know what their mission was and they – I can't speak for him and he doesn't have any recall because of his injuries.

(Burgess Depo. at 86:24-87:14).  Burgess later testified that "anything that involves Mr. Ow what he did or didn't do would be speculation."  (Burgess Depo. at 90:13-15.)

The drill being conducted at the time of the accident required the ARFF personnel to leave the station, proceed northbound on taxiway Bravo, and turn right on taxiway Bravo 1 into the OMC. (Burgess Dep. 27:18-28:9.) Three of the ARFF drivers traveled the route without incident. (Burgess Depo. at 55:22-56:3.) To make any sense out of Burgess's opinion that Ow turned to avoid the aircraft, one must also assume that Ow was unaware that the aircraft would be holding short of the intersection where he would be turning (and thus would never be in conflict with his route). Burgess testified, however, that he does not know whether Ow heard the pilots report that they were holding short, whether Ow heard the controller acknowledging and instructing them to continue holding short, and/or whether Ow heard the pilots acknowledging, again, that they were holding short of Bravo 1. When asked if Ow may have known that the pilots were going to stop, Burgess stated "that's a guess" and that "anything is possible." (Burgess Dep. 37:9-38:8.) He admitted that he doesn't know if Ow knew the aircraft was going to stop. (Burgess Depo. at 78:19-21.)

Burgess agreed that we do not know what Ow heard, saw, thought or knew before and during the accident. (Burgess Depo. at 97:13-19, 98:10-99:24.) It is impossible, then, to know whether Ow would have operated his vehicle any differently if the jet stopped further from the intersection or if the tower had made a separate announcement that the jet was holding short specifically for the drill. Burgess cannot provide expert testimony on this subject; all he can do is guess. This type of speculative testimony is inherently unreliable. *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F. d 843, 861 (9th Cir. 2014). Therefore, Burgess's speculation-based opinions about the cause of the accident should be

excluded.

### B. Burgess's Opinion About Why Ow Turned Right on Bravo 1 Is Speculative and Will Not Assist the Court.

Burgess' opinion about why Ow turned right on Bravo is speculative and will not assist this Court. Expert testimony about state of mind is "impermissible." *In Rosuvastatin Calcium Patent Litig.,* No. 07-805, 2009 WL 4800702, at *8 (D. Del. Dec. 11, 2009) ("Generally, expert witnesses are not permitted to testify regarding 'intent, motive, or state of mind, or evidence by which such state of mind may be inferred'"); *In re Rezulin Prods. Liab.. Litig.,* 309 F. Supp. 2d 531, 547 (S.D.N.Y. 2004) ("Inferences about the intent or motive of parties or others lie outside the bounds of expert testimony.").

In Missouri, a district court excluded testimony from an aviation expert about what the pilots might have "felt" or "forgot." *Johnson v. Avco Corp.,* 702 F. Supp. 2d 1093, 1108-09 (E.D. Mo. 2010). The court ruled that such testimony merely speculated about possibilities and was not based on any scientific basis. *Id.* A district court in Florida likewise granted a motion to strike testimony where an aviation expert opined about whether a pilot felt pressured to land. *King v. Cessna,* No. 03–20482–CIV, 2010 WL 1980861, *6-7 (S.D. Fla. May 18, 2010). The court found that the expert was essentially speculating as to the pilot's state of mind, which was not scientific. *Id.* Similarly here, Burgess opines that Ow turned to avoid or yield to the aircraft, which is non-scientific speculation about Ow's state of mind.

Burgess did not attempt to reconstruct the accident nor has he seen a reconstruction of the accident. (Burgess Depo. at 20:20-21:13.) When asked the basis for his conclusion

that Ow turned to avoid the aircraft, Burgess testified that his opinion is based solely on the security video and the ARFF standard procedures.[2] (Burgess Depo. at 92:3-93:9.) Yet Burgess has no background or training as an ARFF driver. Even assuming Ow was attempting to avoid or yield to the aircraft, Burgess never sought to determine whether Ow could have simply stopped, pulled over, or proceeded straight past the plane. (Burgess Depo. at 94:9-17.) Burgess made no attempt to determine whether Ow could have taken any other actions if he really perceived the need to yield to the holding aircraft. Burgess made no attempt to determine whether Ow's action or inactions caused or contributed to the rollover. He testified that he did not even examine that possibility. (Burgess Depo. at 47:16-21.)

Burgess's report states that "[a]t approximately 1840:32, Rescue 4 turns to avoid Executive Jet 682, on C001" and "[t]he requirements in the Oakland ATCT and Fire Department Letter of Agreement required Rescue 4 to yield to all aircraft and resulted in the truck turning over on its left side." (Burgess Rep. at 5, ¶11.) This opinion – that Ow turned on Bravo 1 to avoid or yield to the jet – is speculative and unhelpful. Burgess's only causal link between the controllers' actions and the accident is this unsupported opinion. He admits that he does not know if Ow saw the aircraft when he came out of the ARFF station or anywhere along the route; doesn't know how fast Ow was driving; doesn't know whether Ow had any distractions in his truck and doesn't know whether Ow was driving his assigned vehicle. (Burgess Depo. at 84:14-85:21.) He further testified that he

---

[2] Notably, none of Plaintiffs' other experts have expressed an opinion that Ow's turn was an evasive action.

doesn't know if Ow was monitoring his radio (Burgess Depo. at 90:2-18) or whether he would have turned in the same place if the aircraft had not been present (Burgess Depo. at 93:10-21). When asked if it is possible that Ow was driving to the OMC as planned and that he was simply driving too fast, Burgess answered that is "definitely speculation." (Burgess Depo. at 100:2-10.)

Burgess admitted that he does know why Ow turned:

> Q. And wouldn't you agree that whether the truck turned to avoid the aircraft is speculation?
> A. As – excuse me as I said it's my opinion based on seeing the aircraft eleven seconds before and seeing the aircraft turn so it's my opinion.
> Q. You don't know why Mr. Ow turned?
> A. No, like I say it's my opinion he turned to avoid the airplane to eliminate a head-on situation.
> Q. But you don't know why he turned?
> A. No.

(Burgess Depo.at 106:7-10). When asked again to admit that he does not know why Ow turned on Bravo 1, Burgess conceded that "It would be speculation." (Burgess Depo. at 111:22-23.) Such speculative evidence is unreliable. *See Ollier v. Sweetwater Union High Sch. Dist.*, 768 F. d 843, 861 (9th Cir. 2014). Even if Burgess's opinion about why Ow turned right was deemed reliable, the opinion is not helpful to the trier of fact because it only offers Burgess's untrained thoughts on the video evidence.

The video evidence is the sole basis for Burgess's opinion. He testified "I see the truck turning and the jet's in view." (Burgess Depo. at 96:19-23.) Burgess admits that he does not know where the video camera is located or how far it is from the accident intersection. (Burgess Depo. at 58:18-24.) Therefore, the conclusions Burgess drew from watching the video do not arise from any specialized knowledge. Instead, his conclusions

stem from his personal opinions of what is depicted in the video. The Court can also watch the video and see what it depicts; Burgess's opinions will not help the trier of fact because he has no special expertise on the subject of why the truck turned. As a matter of law under Rule 702, personal opinion testimony is inadmissible. *See Ollier*, 768 F. 3d at 861. 2014). After watching the video and hearing qualified testimony about the accident, the Court will make the determination on causation. Burgess's lay opinions are irrelevant and should not be permitted at trial.

## III. CONCLUSION

For the foregoing reasons, the United States respectfully requests that Burgess's opinions as to causation be excluded from trial.

Dated: July 23, 2018          Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

ALEX G. TSE
Acting United States Attorney

*/s/Debra D. Fowler*
DEBRA D.FOWLER
Senior Aviation Counsel
debra.fowler@usdoj.gov
JOSHUA H. JOSEPH
joshua.h.joseph@usdoj.gov
Torts Branch, Civil Division
U.S. Department of Justice
Post Office Box 14271
Washington, DC 20044-4271
Tel: (202) 616-4025/30
Fax: (202) 616-4002

Attorneys for United States

## <u>CERTIFICATE OF SERVICE</u>

I certify that on July 23, 2018, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will serve an electronic copy to the following counsel of record:

> Steven J. Bell, Esq.
> Ross J. Psyhogios, Esq.
> JONES CLIFFORD, LLP
> 1390 Market Street, Suite 1200
> San Francisco, CA 94102
> sbell@jonesclifford.com
> rpsyhogios@jonesclifford.com

> /s/ *Debra D. Fowler*
> Attorney for Defendant
> United States of America